UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| SHEILA D. SMITH, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) CAUSE NO. 3:18-CV-411-PPS-MGG |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Sheila Smith appeals the Social Security Administration's decision to deny her application for disability insurance benefits and supplemental security income - both applications alleging disability beginning May 10, 2014. Smith suffers from several serious medical issues including degenerative disc disease of the cervical and lumbar spine. [Tr. 13.][1] An administrative law judge determined Smith was not disabled within the meaning of the Social Security Act and that she had the residual functional capacity (RFC) to perform light work with some additional postural limitations. Although she could not perform her past work, the ALJ found that Smith could perform other jobs such as electronics worker, production assembler, and small products assembler.

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 12.

Smith argues that the ALJ erred in relying on the state agency physicians who did not consider nearly two years of medical records. Because I find that over two hundred pages of medical evidence, spanning a time frame of two years, was not examined by the state agency physicians, and the ALJ improperly weighed this evidence by herself, I will REVERSE the ALJ's decision and REMAND on this issue**.**

## Discussion

The ALJ found that Smith has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, osteoarthritis in her left hip, mild osteoarthrisits of the bilateral knees, diabetes, and bursitis of the bilateral shoulders. [Tr. 13-14.] Additionally, Smith also suffers from fibromyalgia which the ALJ found to be a non-medically determinable impairment pursuant to SSR 12-2p, and the non-severe impairments of overactive bladder and mental impairments of depression and anxiety, which are fully recounted in the ALJ's opinion and need not be repeated here. [Tr. at 14-16.]

Before reviewing the evidence, let's start with an overview of the legal framework. My role is not to determine from the beginning whether or not Smith is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard

is not particularly demanding. The Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there has to be more than a "scintilla" of evidence. *Id.* So in conducting my review, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

Smith's qualms with the ALJ's opinion largely center on Listing 1.04, which involves disorders of the spine - so my review of her medical history will concentrate on the same. Back in December 2010, Smith had right-sided lower back pain extending to her legs, and an MRI showed probable recurrent disc extrusion and degenerative disc disease at L4-5 and L5-S1 and associated facet joint spondylosis, and conjoined origin of the L5 and S1 nerve root sleeves. [Tr. 388.]

Smith's problems increased after a workplace accident in October 2012, where a metal bar on a trash bin came down on her head, resulting in shoulder and neck pain. [Tr. 433.] Following the incident, Smith had a CT cervical spine exam which showed bulging disc material with endplate osteophytic ridging producing mild stenosis of the canal along with mild facet degenerative changes at the C5-6 canal. [Tr. 448.] The C6-7 canal was also narrowed due to a bulging disc with "[m]ild cervical degenerative

3

changes resulting in only mild stenosis of the canal, predominantly at the C5-6 level."
[*Id.*]

Smith saw Dr. Douglas Streich on December 4, 2013, for a social security disability evaluation. [Tr. 471-76.] Dr. Streich found Smith suffered from major depressive disorder, anxiety disorder, spinal stenosis, diabetes, hyperlipidemia, chronic pain issues, and being overweight. [Tr. 475.] Dr. Streich opined that Smith's depression stemmed from chronic pain issues. [*Id.*]

On January 14, 2014, Smith had multiple x-rays, including one of her lumbar spine. The x-ray showed a severe narrowing of the L5-S1 disc space with some mild anterior and posterior osteophyte formation. [Tr. 492.] In interpreting the x-ray, Dr. Jonathan Kraas opined that Smith had degenerative disc disease at the L5-S1 and noted degenerative changes in the S-I joints as well. [*Id.*]

Smith's bad luck continued. On February 19, 2014, she slipped and fell backwards, causing more back and hip pain. A doctor in the emergency room noted a chronic deformity of the proximal femur and left hip contusion. [Tr. 509-10.] Bilateral shoulder pain was another malady Smith suffered, and Dr. Clemency commented that it was severe and originating from her cervical spine. [Tr. 525.]

Following unsuccessful therapy, Smith had an MRI on November 14, 2014, which Dr. George DePhillips, a neurosurgeon, interpreted as Smith having a bulging disc and protrusion at the C5-C6 level, and "[t]here may be mild nerve root impingement" at the S1 level. [Tr. 590-91.]

4

On March 26, 2015, Smith started pain management with Dr. Ajit Pai. [Tr. 605.] Dr. Pai administered nerve blocks and epidural steroid injections which provided some relief, but Smith was still experiencing pain, including lower back pain. [Tr. 647-48; 649; 657-58; 665-66.] Dr. Pai also prescribed medication to Smith including Oxycodone. [Tr. 700.]

Two agency consultants reviewed Smith's medical records - Dr. Corcoran on January 16, 2015, and Dr. Ruiz on April 30, 2015. Both of these doctors specifically mentioned, and specifically considered Listing 1.04, but found that Smith did not meet or equal that Listing. [Tr. 102-105; 123-25.] The consultants assessed Smith with the ability to perform medium work, which the ALJ gave "little weight" because she found the evidence received at the hearing level supported limiting Smith to work at the light level of exertion instead. [Tr. 20.] However, the ALJ did adopt the state agency consultant's determinations that Smith did not meet or equal the requirements of Listing 1.04. [Tr. 102-05; 123-25.] The ALJ further noted that "no acceptable medical source has mentioned findings in severity to the criteria of any listed impairment, either individually or in combination." [Tr. 16.]

After the state consultants reviewed the record, more than two hundred additional pages of medical records were added before the ALJ hearing (and a few post-hearing). [Tr. 380-81; 655-888; 889-897.] In a nutshell, these more recent medical documents include chronic pain management treatment office records, records from Rochester Orthopedics detailing right knee pain, a bladder ultrasound, a knee x-ray,

physical/occupational therapy records, office treatment records from Dr. Joseph Binfet, office treatment records from the Bowen Center relating to mental health and a psychiatric evaluation, office treatment records from Jeremy Schue from Community Internists relating to knee and back pain, hospital records regarding a mammogram and pelvic procedure, and a prescription for a walking cane. [*Id.*]

I will highlight just a few things that seem relevant from the new medical records. Smith saw Dr. Pai on October 15, 2015, and stated she had now started to use a walker most of the time. [Tr. 703.] Yet during the hearing before the ALJ, Smith testified that she uses a cane around the house. [Tr. 63.] During Dr. Pai's exam, he observed moderate tenderness in Smith's bilateral lumbar spine, positive straight leg raise test bilaterally, and antalgic gait. [Tr. 704.]

Smith returned to Dr. Pai on December 7, 2015, for chronic back and neck pain. [Tr. 706-07.] At his recommendation, Smith received another cervical facet nerve block. [Tr. 708, 719.] According to Smith, the nerve block gave her 60-70% relief for a few days, but then the pain returned. [Tr. 711.] Dr. Pai switched Smith's medication and recommended another nerve block which was performed on May 16, 2016. [Tr. 717, 721.] She returned to Dr. Pai on August 30, 2016, for continued treatment of her neck pain radiating to her left and right shoulder, and got another injection. [Tr. 781, 783, 779.] Smith saw Dr. Pai on November 2, 2016, for radiating neck and back pain and he recommended another facet nerve block injection. [Tr. 775.]

6

Another new addition to the medical record, after the state agency consultants reviewed them, are records from the Bowen Center. The Bowen Center did an initial mental health assessment of Smith on September 15, 2016. [Tr. 785.] She was depressed and was referred to outpatient therapy. [Tr. 785, 789.]

The hearing before the ALJ did not happen until February 28, 2017. Smith testified during the hearing that the injections she receives in her back and knees provide some relief from the pain for a little bit, but then the pain returns. [Tr. 57-58.] Smith testified that she uses a cane around the house, and when she goes shopping, she uses a motorized cart. [Tr. 63-64.] According to Smith, her boyfriend does the cleaning and her son usually helps out with the household chores. [Tr. 64.]

With these facts in mind, let's turn to the legal argument in this case. Smith argues that the ALJ improperly performed a perfunctory analysis of whether her combined impairments met or equaled Listing 1.04, and that she should have consulted a medical expert. Listing 1.04 is met when a claimant has a disorder of the spine that results in the compromise of a nerve root or the spinal cord, and also displays one of the following:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
>     \*        \*        \*        \*        \*

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 CFR pt 404, sub P., App. 1, section 1.04.

The ALJ's analysis of this issue is as follows:

> With respect to listing 1.04 and the back, the undersigned notes there is evidence of nerve root compression (Exhibit 27F.11). However, there is no evidence of motor loss accompanied by sensory or reflex loss. To that end, the claimant had normal motor strength in the bilateral legs (Exhibit 35 F/4). Sensation was intact to light touch and pinprick (Exhibit 15F/3). Furthermore, there were no signs of muscle atrophy or wasting (Exhibit 15F/3). As such, the undersigned does not find that the claimant meets the listing criteria. With respect to the neuropathy secondary to the diabetes, the record shows that the claimant had normal sensation to light touch and pinprick. She sometimes walked with a limping gait but sometimes walked with a normal gait as documented in the record (Exhibit 15 F/3, 27 F/11, 22 F/20, 34 F/9, 35 F/4). She did not demonstrate ineffective ambulation (Exhibit 22F/20). Furthermore, with respect to the upper extremities, the claimant reported doing normal household chores, going fishing with her son or her boyfriend, driving, and working as a cashier in 2015 (Exhibit 24 F/4, 28 F/4 and 19 F/10). As such, the undersigned does not find that the claimant meets the criteria of the listing.

[Tr. 16.] The ALJ thus sets forth her opinion that Smith did not meet the requirements of Listing 1.04(A) because the record does not document chronic motor loss (demonstrated by muscle weakness), accompanied by sensory or reflex loss; and does not meet Listing 1.04(C) because Smith has not demonstrated ineffective ambulation.

Smith first maintains that because she has the presence of at least "80 percent of the required criteria" of Listing 1.04(A), she has medically equaled that listing. This argument is legally incorrect. Smith has the burden of proof to demonstrate that she has medical conditions that meet, or are equal in severity to every element of a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993) (overruled on other grounds) (finding the applicant must satisfy all of the criteria in the Listing to receive an award of disability insurance benefits under Step 3). Indeed, one of the cases cited by Smith, *McHenry v. Berryhill*, 911 F.3d 866, 872 (7th Cir. 2018) (quotation and citations omitted) (emphasis in original), makes this distinction: "[t]o be sure, [claimant] bore the burden to show that her back pain met or medically equaled *all* the criteria under Listing 1.04A . . . . An impairment that manifests only some of the required criteria, no matter how severely, does not qualify."

However, Smith does put forth a winning argument. In this case, more than 200 pages of documents spanning the course of over 2 years were not reviewed by the state agency physicians. The sheer volume of documents the agency consultants did not review is worrisome. Recently, the Seventh Circuit has "said repeatedly that an ALJ may not 'play doctor and interpret new and potentially decisive medical evidence' without medical scrutiny." *McHenry,* 911 F.3d at 871 (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)); *see also Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (remanding case where doctor did not examine patient and had "reviewed only a fraction of [Claimant's] treatment records that were available before [Claimant]

9

submitted additional evidence."); *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (remanding, and criticizing ALJ's reliance on state agency psychiatrist and psychologist who only reviewed part of the psychiatric treatment records).

Here, the parties quibble about whether the state agency consultants were aware of the results of a December 10, 2014 MRI of the spine (which came close in time to their reviews), in which Dr. Pai stated the MRI showed degenerative spine changes that "abut and/or compress [the nerve root]." [Tr. 661] But even setting aside the confusion about this one MRI, it is very clear that hundreds of pages of medical evidence were generated after the state agency physicians' reviews, and they definitely did not see that additional medical evidence.

To the extent the Commissioner argues that Smith has failed to pinpoint anything in the new medical documents showing she has an impairment or combination of impairments that meets or equals all of the criteria of Listing 1.04, this ignores the entire point. Both state agency consultants determined Smith did not meet or medically equal Listing 1.04, based upon the limited review of the documents they conducted. I am not in the position (and neither is the Commissioner) to independently review hundreds of pages of additional medical records and determine whether this bulky new information (which documents chronic pain management, new tests, and potentially relevant information regarding Smith's range of motion and extremity weakness), is medically significant to the ALJ's determination.

Here, the ALJ was not qualified to assess on her own the significance of the new medical evidence. As the Court found in *Charita W. v. Berryhill*, No. 18-CV-955, 2019 WL 2524096, at *4 (June 18, 2019), "it is not the province of the ALJ or Commissioner's counsel to determine whether the presence or absence of a medical episode or event along with other matters contained in the unreviewed medical records is medically significant; that job is reserved for the medical expert and other physicians of record." For this reason, I find the ALJ did not properly evaluate the medical evidence in the record, and remand is necessary because substantial evidence does not support the ALJ's conclusion. On remand, the ALJ is encouraged to seek additional medical review of the entire record.

\* \* \*

Because I am remanding this case for the reason stated above, I need not discuss the remaining issues raised by Smith, including that the ALJ erred in her assessment of the RFC because it did not reflect any mental or social limitations. Smith can raise those issues directly with the ALJ on remand.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

ENTERED: August 29, 2019.

 /s/   Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT